Filed 7/13/15  Jennifer L. v. Superior Court CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JENNIFER L., | F071454 |
| Petitioner, | |
| v. | (Super. Ct. No. 14JD0001) |
| THE SUPERIOR COURT OF KINGS COUNTY, | **OPINION** |
| Respondent; | |
| KINGS COUNTY HUMAN SERVICES AGENCY, | |
| Real Party in Interest. | |

### THE COURT[*]

ORIGINAL PROCEEDING; petition for extraordinary writ review.  Jennifer Lee Giuliani, Judge.

Jennifer L., in pro. per., for Petitioner.

No appearance for Respondent.

Colleen Carlson, County Counsel, and Rise A. Donlon, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]      Before Levy, Acting P.J., Gomes, J. and Peña, J.

Jennifer L. in propria persona seeks extraordinary writ relief from the juvenile court's orders issued at a contested 12-month review hearing (Welf. & Inst. Code, § 366.21, subd. (f))[1] terminating her reunification services and setting a section 366.26 hearing as to her children, 10-year-old Ashlee G., five-year-old Gauge V. and three-year-old A.V.[2]  Jennifer contends her attorney was ineffective, the juvenile court allowed testimony into evidence despite valid objections, and the juvenile court conducted the hearing without essential people present.  We deny the petition.

### PROCEDURAL AND FACTUAL SUMMARY

In January 2014, Jennifer was arrested following a probation search in which officers found a large bindle of methamphetamine, glass pipes and two sharp knives in her bedroom to which the children, then eight-year-old Ashlee, three-year-old Gauge and 23-month-old A.V., had unrestricted access.  Jennifer admitted having an extensive history of drug use, but claimed the methamphetamine and pipes belonged to Julio who was incarcerated on drug-related charges.  Julio is the father of Gauge and A.V.  Juan is the alleged father of Ashlee and resides in Mexico.

The Kings County Human Services Agency (agency) took the children into protective custody and placed them in foster care.

The juvenile court exercised its dependency jurisdiction over the children after sustaining allegations that Jennifer's substance abuse placed the children at a substantial risk of serious physical harm or illness.  (§ 300, subd. (b).)  The juvenile court ordered a plan of reunification for Jennifer but denied Julio and Juan reunification services.  Jennifer's services plan required her to complete a parenting program, participate in

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]     Because this child's name is unique, we refer to her by her first and last initials to protect her privacy.  (Cal. Rules of Court, rule 8.401(a)(2).)

outpatient substance abuse treatment, submit to random drug testing and attend weekly Alcoholics/Narcotics Anonymous (AA/NA) meetings.

Over the ensuing six months, Jennifer completed a parenting class and complied with many of her case plan requirements, but made only moderate progress because she continued to test positive for drugs. In mid-January 2014, she submitted a hair follicle for drug testing and it yielded a positive result for methamphetamine. When questioned about the positive result, Jennifer was adamant that she had not used drugs since November 2013. In May 2014, Jennifer tested positive for methamphetamine by hair follicle analysis at an even higher level. She also tested positive for marijuana. She denied using any drugs since January 2014 but said she was around people who were smoking marijuana in April. In August, she tested negative for drugs by hair follicle analysis. Jennifer was relieved by the results, stating that she relapsed and smoked marijuana in July with friends. She said she only "took two puffs" and had not used any drugs since.

In its report for the six-month review hearing, the agency informed the juvenile court that Jennifer enrolled in a dual diagnosis treatment program in February 2014 and was participating and engaged in class. Despite Jennifer's moderate progress, the agency believed there was a substantial probability the children could be returned to her after an additional period of reunification services and recommended the juvenile court continue services for her.

In September 2014, the juvenile court conducted the six-month review hearing, continued Jennifer's reunification services, and set the 12-month review hearing for February 2015.

Meanwhile, Jennifer tested positive for methamphetamine and marijuana by hair follicle testing in October and December 2014. When confronted with the results, she cried and stated "I only take a few hits due to being so stressed out." In addition, she was not regularly participating in her dual diagnosis program. Consequently, the agency

3.

recommended the juvenile court terminate her reunification services and set a section 366.26 hearing.

On April 14, 2015, the juvenile court convened a contested 12-month review hearing. County counsel called Jennifer as a witness. She testified that the social worker recently asked her to drug test and she refused because she wanted to be tested at a different testing facility. She did so and her attorney had the results. She did not provide them to her social worker because her social worker indicated that she was lying so she dropped it. She said the social worker misunderstood what she meant when she said she "took a few hits." She meant she took "verbal hits" as in being under attack not as in using methamphetamine. She explained she missed her dual diagnosis classes because she was ill but did not provide any medical documentation to substantiate her illness.

When questioned by her attorney, Jennifer testified she last used methamphetamine in July 2014. She said the positive drug test results from October and December 2014 were inaccurate. Her attorney showed her an unmarked document to refresh her memory as to a subsequent hair follicle drug test. Jennifer responded that the document reflected the results of a hair follicle drug test she took on March 16, 2015 at Quest Diagnostics in Coalinga. She started to read from the document, stating the results were negative for each category of drugs. County counsel objected to her reading the document and the juvenile court struck her answer. The juvenile court continued the hearing until April 16, 2015.

On April 15, 2015, the agency filed an addendum report detailing social worker Kristi Herrera's unsuccessful efforts to validate Jennifer's March 16, 2015 drug test results. Herrera contacted the Coalinga Regional Medical Center and spoke to a lab technician who stated that the laboratory did not conduct hair follicle testing. In addition, Jennifer was last seen at the medical center in April 2014 for an emergency room visit. Herrera also contacted Quest Diagnostics and provided the requisition number, donor identification, donor name, collection date and time. The staff member was unable to

find a test with that information but asked for the accession number. She then asked whether the collection date looked altered because she was able to locate a test completed for Job Care in November 2014 with that accession number and donor name. She said she was unable to provide any further information. Herrera was able to confirm with Job Care that Jennifer paid to be tested there in November 2014 but could not provide any further detail without Jennifer's consent.

The agency also provided the juvenile court an update on Jennifer's attendance in her dual diagnosis treatment program. She attended phase II groups on nine occasions from early January 2015 to early April 2015. She missed three group sessions and four individual therapy sessions during that same time frame.

On April 16, 2015, Jennifer resumed her testimony and stated that the March 2015 negative test results were correct. She explained that she did not give the test results to the social worker because she was moving and they were packed.

Following argument, the juvenile court stated that it did not find Jennifer's testimony credible. It found that she made minimal progress, terminated her reunification services, and set a section 366.26 hearing.

This petition ensued.

## DISCUSSION

Jennifer contends the juvenile court's orders terminating her reunification services and setting a section 366.26 hearing are erroneous on the following grounds: "[i]neffective [counsel], not all parties present, and valid testimony or evidence [was] mishandled." Jennifer included with her petition a form authorizing the release of her health information dated in January 2015, select pages from the agency's September 2014 status review report, attendance sheets with stickers and a personal 2014 calendar. Jennifer did not support each point of error with argument, citation to legal authority and citation to the record. (Cal. Rules of Court, rule 8.452(a)(1).) She seeks an order from

this court directing the juvenile court to vacate the section 366.26 hearing and return the children to her custody or continue reunification services.

As a preliminary matter, we can only review the record that was before the juvenile court. (*In re Zeth S*. (2003) 31 Cal.4th 396, 405.) Of the documents that Jennifer included with her petition, only the September 2014 status review report is part of the juvenile court record. Consequently, we cannot review Jennifer's authorization to release health information, class attendance sheets and calendar. We turn to Jennifer's points of error.

### Ineffective Assistance of Counsel

Jennifer contends her trial attorney was ineffective for not presenting evidence or testimony on her behalf. She fails, however, to meet her burden on appeal.

A petitioner asserting ineffectiveness of counsel must prove trial counsel's performance was deficient, resulting in prejudicial error. (*In re Kristin H*. (1996) 46 Cal.App.4th 1635, 1667-1668.) We need not evaluate counsel's performance if petitioner fails to prove prejudicial error; i.e., absent counsel's errors, there is a reasonable probability of a more favorable outcome. (*In re Nada R*. (2001) 89 Cal.App.4th 1166, 1180.) Therefore, to prevail on a claim that her attorney was ineffective, Jennifer would have to identify the specific acts that rendered her attorney ineffective and show that but for those acts the juvenile court would have ruled in her favor.

Jennifer does not specify what evidence she believes her attorney should have elicited or produced. It appears however that by her inclusion of her class attendance, she is attempting to show that her attorney was ineffective for not producing evidence to rebut the agency's claim that she was not regularly attending her dual diagnosis classes. However, as we stated, that evidence was never admitted into evidence and therefore is not subject to our review. Further, even if probative evidence on that issue exists, Jennifer would be hard-pressed to show that she was prejudiced by her attorney's failure to produce it. That is because Jennifer's irregular attendance was only one reason the

6.

juvenile court ruled as it did. The juvenile court also believed that Jennifer was still using drugs and that she falsified a test result to make it appear otherwise.

We conclude Jennifer failed to meet her burden of demonstrating her attorney was ineffective.

## Essential Parties Not Present

Jennifer contends the juvenile court erred in conducting the contested 12-month review hearing without Julio and social worker Stephanie Wlaschin in attendance. According to the record, Ms. Wlaschin did appear for the April 14, 2015 hearing and her supervisor, Kristi Herrera, appeared for the continued hearing on April 16. Further, Julio was incarcerated and not transported to the hearing. His attorney advised the court that Julio had been denied reunification services and in essence did not have any issues to litigate.

Jennifer does not explain the nature of the juvenile court's error. Where an appellant complains of error without pertinent argument, we may consider the issue abandoned. (*Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119-1120.) We elect to do so in this case and comment no further.

## Testimony Admitted Into Evidence

Jennifer contends the juvenile court erred in admitting testimony into evidence over valid objections. However, she does not specify which evidence should have been excluded. In the absence of pertinent argument, we deem the issue abandoned. (*Berger v. Godden*, *supra*, 163 Cal.App.3d at p. 1119.)

## DISPOSITION

The petition for extraordinary writ is denied. This opinion is final forthwith as to this court.

7.